UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL KOZLOWSKI,

       Plaintiff,                         CIVIL ACTION NO. 08-CV-13880

vs.

                                           DISTRICT JUDGE THOMAS L. LUDINGTON

UNITED STATES OF                  MAGISTRATE JUDGE MONA K. MAJZOUB
AMERICA, C. EICHENLAUB,
and W. MALATINSKY,

       Defendants.
_____/

**REPORT AND RECOMMENDATION**

**I.**    **RECOMMENDATION**: This Court recommends that the Motion for Summary Judgment filed by Defendant Malatinsky on October 26, 2009 (docket no. 31) be **GRANTED**.

**II.**    **REPORT**:

This matter comes before the Court on the Motion for Summary Judgment filed by Defendant Malatinsky. (Docket no. 31). Plaintiff is a federal prisoner proceeding *pro se*. He has not responded to Defendant's motion and the time for responding has now expired. All pretrial matters have been referred to the undersigned for decision. (Docket no. 6). The Court dispenses with oral argument pursuant to E.D. Mich. LR 7.1(e). This matter is now ready for ruling pursuant to 28 U.S.C. § 636(b)(1)(B).

    **A.**    **Facts**

Plaintiff filed this civil rights action under *Bivens v. Six Unknown Named Agents of Fed.*

1

*Bureau of Narcotics*, 403 U.S. 388 (1971), alleging in part that Defendant Malatinsky violated his Eighth Amendment rights by failing to treat his urinary tract infection and by refusing to provide him four catheters per day. (Docket no. 1, p. 6). Plaintiff was housed at the Federal Correctional Institution at Milan, Michigan ("FCI Milan") during the events pertinent to this action. (Docket no. 1). Defendant Malatinsky is a physician and the Clinical Director of FCI Milan. (Docket no. 1).

Plaintiff has spina bifida with associated neurogenic bladder and paraplegia. (Docket no. 1, p. 3; Docket no. 31, ex. A). His medical condition requires him to use urinary catheters to empty his bladder several times a day. (Docket no. 1, p. 3). Plaintiff contends that he received four catheters per day while he was housed at FCI Elkton. He states that he was transferred to FCI Milan on April 24, 2007 and since that time has only received one catheter per week. (Docket no. 1, p. 4). Plaintiff states that he is forced to wash and reuse catheters, causing infection. (Docket no. 1, p. 4). He states that Defendant Malatinsky is aware that he has a urinary tract infection which has gone untreated for over 15 months. (Docket no. 1, p. 4-5). Plaintiff asserts that he made Defendant Malatinsky aware of his need for four catheters per day, but he continues to receive only one catheter per week. (Docket no.1, p. 6). On October 26, 2009 Defendant Malatinsky filed the instant Motion for Summary Judgment arguing that the claims against him should be dismissed on the basis of qualified immunity. (Docket no. 31).

**B.     Governing Law**

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Covington v. Knox*

2

*County Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000). Once the moving party has met its burden of production, the nonmoving party must come forward with significant probative evidence showing that a genuine issue exists for trial. *Id.* The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis omitted).

### C.     Analysis

In resolving the issue of qualified immunity on summary judgment, courts are required to engage in a two-step decisional process: (1) whether the plaintiff has shown sufficient facts to make out a violation of a constitutional right; and (2) whether the violation involved clearly established constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, --- U.S. ---, 129 S. Ct. 808, 815-16 (2009); *Dickerson v. McClellan*, 101 F.3d 1151, 1157-58 (6th Cir. 1996).

Plaintiff has alleged a violation of his Eighth Amendment right to be free from cruel and unusual punishment based on inadequate medical care. To sustain a claim of inadequate medical treatment, a prisoner must demonstrate that the defendant acted with deliberate indifference to his serious medical need. A sufficiently serious medical need is one that has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Blackmore v. Kalamazoo County,* 390 F.3d 890, 897 (6th Cir. 2004) (citations omitted). A medical need is serious if the failure to treat the condition could result in the unnecessary and wanton infliction of pain. *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997) (citation omitted). Deliberate indifference occurs when an official "knows of and consciously disregards an excessive risk to inmate health and safety." *Farmer v. Brennan*, 511 U.S. 825, 836-37

(1994) ("deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.").

**1. Failure to Treat the Urinary Tract Infection**

To prevail on his claim, Plaintiff must first show that he suffered from an objectively serious medical need. Plaintiff alleges that he suffered from an untreated urinary tract infection. Defendant Malatinsky submitted a declaration in support of his Motion for Summary Judgment in which he states that the Plaintiff never exhibited clinical signs or lab results indicative of an active infection. (Docket no. 31, ex. A). His declaration states that urine colonization with bacteria is a known phenomenon among people who manage urine with Clean Intermittent Catheterization, such as the Plaintiff. (Docket no. 31, ex. A). The declaration further states that in order to determine whether someone with Plaintiff's medical condition has a urinary tract infection, the clinician must look for the presence of fever or elevations of white and red blood cell counts in a Complete Blood Count (CBC) report. (Docket no. 31, ex. A).

Plaintiff's medical records demonstrate that he was evaluated by Health Services on numerous occasions with complaints of pain he attributed to a urinary tract infection. (Docket no. 32, ex. B). Physical examination findings showed that Plaintiff had normal vital signs and no fever. Plaintiff's CBC results showed normal white and red blood counts. His urinalysis reports showed abnormalities, including the presence of nitrate and bacteria, white blood cells enterase, cloudy urine, trace blood, and elevated white and red blood cells. Plaintiff was evaluated by Defendant Malatinsky and other health care practitioners and was found to have chronic colonization secondary to self-catheterization. (Docket no. 32, ex. B). On October 5, 2007, a Mid-Level Health Care Practitioner evaluated Plaintiff for complaints related to an infection and assessed him as having chronic urinary

4

tract infections.  (Docket no. 32, ex. B).

Defendant Malatinsky has not demonstrated as a matter of law that Plaintiff did not have a serious medical need.  Plaintiff visited Health Services repeatedly for complaints of pain he attributed to a urinary tract infection, clinical lab reports reflect abnormal findings, and a progress note written by a Mid-Level Practitioner assessed Plaintiff's condition as "chronic UTI's."  Viewing the evidence in the light most favorable to the Plaintiff, the Court should find based on the record before it that genuine issues of material fact exist regarding whether Plaintiff had a urinary tract infection, and whether a urinary tract infection in an individual diagnosed with neurogenic bladder disease and paraplegia is a serious medical condition.

Defendant Malatinsky argues that he was not deliberately indifferent to Plaintiff's medical needs.  The Plaintiff's medical records show that Defendant Malatinsky evaluated Plaintiff on multiple occasions, conducted physical examinations, ordered and evaluated lab work, and repeatedly concluded that Plaintiff was not suffering from an active urinary tract infection because he did not exhibit clinical signs of infection, such as fever, lethargy, toxicity or confusion.  (Docket no. 32, ex. B; Docket no. 31, ex. A).  Plaintiff was prescribed mild pain relievers and was educated in proper self-catheterization techniques.  (Docket no. 32, ex. B).

The record clearly demonstrates that Defendant Malatinsky was responsive to Plaintiff's medical complaints.  Complaints that a physician has been negligent in diagnosing or treating a medical condition, and disagreements over the treatment method a physician chooses, fail to state cognizable claims under the Eighth Amendment.  *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1996). *See also Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).  The Court should find that Plaintiff has failed to present evidence upon which a reasonable jury could conclude that Defendant

Malatinsky was deliberately indifferent to his serious medical needs.

### 2. Failure to Authorize Four Catheters Per Week

Plaintiff alleges that Defendant Malatinsky recklessly disregarded a known medical risk by providing one urinary catheter a week when twenty-eight are necessary. Plaintiff asserts that the catheters are meant for single-use only and are not intended to be cleaned and reused. Defendant Malatinsky states in his declaration that the Bureau of Prisons ("BOP") followed the practice of Clean Intermittent Catheterization ("CIC"), whereby urinary catheters are reused by the prisoner after they have been carefully washed and rinsed. (Docket no. 31, ex. A). The declaration further states that Defendant Malatinsky contacted the North Central Regional Medical Director for the BOP in response to Plaintiff's request for additional catheters, and asked if the allotment of four catheters per month was supported by the BOP. (Docket no. 31, ex. A). The declaration states that he was informed by the Regional Medical Director that the practice was acceptable. (Docket no. 31, ex. A). Defendant Malatinsky declares that he contacted the Regional Medical Director again after he learned that other federal agencies had modified their policy on catheter reuse. (Docket no. 31, ex. A). The declaration states that the FCI Milan implemented a program on October 23, 2008 in response to a change in federal policy. Under the new policy, inmates are provided with 28 catheters per week. (Docket no. 31, ex. A).

The Plaintiff provided the Court with copies of his Administrative Remedy forms related to his request for additional catheters. (Docket no. 1). The Administrative Remedy forms show that on May 17, 2007 the Warden denied Plaintiff's administrative grievance concerning his request for four catheters per day, finding that "[o]n May 1, 2007, [Plaintiff was] seen and evaluated by the Clinical Director, who consulted with the Regional Medical Director and determined one catheter

each week was sufficient for [Plaintiff's] medical condition." (Docket no. 1). Plaintiff appealed the Warden's denial to the Regional Medical Director for the BOP. The Regional Health Director denied the appeal on June 26, 2007, finding that the Health Services staff were responsive to Plaintiff's medical needs and acted in compliance with the BOPs' Patient Care policy, Program Statement 6031.01. (Docket no. 1). On September 25, 2007, the Administrator for the National Inmate Appeals also denied Plaintiff's appeal, finding that Plaintiff received prompt, professional medical care consistent with reasonable community standards and BOPs' policy. The Administrator for the National Inmate Appeals stated:

> Our review of this matter reveals both the Warden and Regional Director have adequately addressed your concerns. This topic has been researched in the past and the conclusion is that self-catheterization is a clean technique as opposed to a sterile technique. There are no scientific or manufacturer recommendations for a new catheter to be used each time.

The record in this case shows that Defendant Malatinsky responded to Plaintiff's request for additional catheters, contacted the Regional Medical Director for the BOP to inquire into BOP policy, and was informed that the BOP approved the policy of issuing four catheters per month. Plaintiff has not shown that Defendant Malatinsky acted in reckless disregard of Plaintiff's serious medical need. Accordingly, his claim against Defendant Malatinsky should be dismissed.

**III.    NOTICE TO PARTIES REGARDING OBJECTIONS:**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th

Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: February 01, 2010              s/ Mona K. Majzoub
                                      MONA K. MAJZOUB
                                      UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Michael Kozlowski and Counsel of Record on this date.

Dated: February 01, 2010              s/ Lisa C. Bartlett
                                      Case Manager